## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 17-320-8 |
| EVIZAEL BARBOSA-DELGADO | |

**PAPPERT, J.**                                                    **July 27, 2022**

### MEMORANDUM

Evizael Barbosa-Delgado pleaded guilty, pursuant to a written guilty plea agreement, to conspiring to distribute cocaine and possession of a firearm in furtherance of a drug trafficking crime. At his plea hearing, he acknowledged he read, understood and discussed his plea agreement with his lawyer.[1] After a lengthy colloquy, the Court found his plea was knowing, voluntary and intelligent and accepted it accordingly. Barbosa-Delgado did not appeal his conviction or sentence. Instead, he now moves *pro se* under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence, arguing his lawyer provided constitutionally ineffective assistance. Because his motion is time-barred and, in any event, lacks merit, the Court denies it and will not issue a certificate of appealability.[2]

---

[1]     Since Barbosa-Delgado says he only speaks Spanish, an interpreter was sworn to translate for him at his plea hearing. (Gov't Resp., Ex. A., ECF 404-1 at 4.) His *pro se* motion is in English and it does not argue that he could not understand his interpreter.

[2]     Barbosa-Delgado requests an evidentiary hearing and appointment of counsel. (Def.'s Mot., ECF 388 at ECF p. 2.) Rule 8(c) of the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. § 2255, requires the Court to appoint counsel for movants who qualify for appointed counsel under 18 U.S.C. § 3006A(g) *if* an evidentiary hearing is required. *See United States v. Iasiello*, 166 F.3d 212, 213 (3d Cir. 1999). No hearing is required because Barbosa-Delgado's Section 2255 motion and the files and records of his case conclusively show he is not entitled to relief. *See United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005) (*citing* 28 U.S.C. § 2255). As a result, it is not necessary to appoint counsel for the issues raised in his motion.

I

Barbosa-Delgado was arrested in May 2017 when a search warrant was executed at his apartment after he and nine co-conspirators were indicted for a conspiracy to distribute a controlled substance.  (Def.'s Mot., ECF 388 at ECF p. 9.)  During the search, law enforcement recovered a Smith and Wesson 9mm handgun and $15,960 in cash.  (*Id.*)  In August 2018, he pleaded guilty to conspiring to distribute five kilograms or more of cocaine and possession of a firearm in furtherance of a drug trafficking crime and admitted the seized firearm and cash had a connection to his illegal drug-trafficking activity.  *See* (Gov't Resp., Ex. A. (Plea Hr'g Tr.), ECF 404-1); *see also* (Guilty Plea Agreement, ECF 199).  Nevertheless, he now claims his lawyer was ineffective for failing to challenge the sufficiency of evidence linking the seized money and weapon to his involvement in the sale of narcotics.  (Def.'s Mot., ECF 388 at ECF p. 5, 7, 10.)

During Barbosa-Delgado's August 2018 plea hearing, the prosecutor explained the factual circumstances underlying his plea, including law enforcement's seizure of the gun and cash and wire interceptions that made clear that "in the immediate timeframe prior to the seizure, Barbosa-Delgado was actively selling drugs."  (Gov't Resp., Ex. A. (Plea Hr'g Tr.), ECF 404-1 at 25-27.)  The prosecutor also explained that law enforcement "training and experience" shows drug traffickers often keep weapons where they live "to protect drug proceeds and/or drugs."  (*Id.* at 27.)  In addition, Barbosa-Delgado and the prosecution stipulated "that during the course of the conspiracy, [he] was involved with the distribution of at least 3 and a half kilograms but less than 5 kilograms of cocaine."  (*Id.*)

The Court asked Barbosa-Delgado if he agreed that the prosecutor "correctly and

accurately summarized the facts of the case against" him. (*Id.* at 28.)  He did, "fully admit[ing]" the facts and agreeing that he did what the prosecutor said he had done. (*Id.*)  He agreed to the prosecutor's summary of the facts with an understanding that, absent his guilty plea, he had the right to have the facts "submitted to a jury and proven beyond a reasonable doubt."  (*Id.* at 27-28.)  He also acknowledged the Court could consider the admitted facts during his sentencing, including "to enhance his criminal history category" and his total offense level.  (*Id.* at 28.)

After the colloquy, the Court accepted Barbosa-Delgado's guilty plea.  (*Id.* at 35.)  It found he was competent to enter an informed plea and that his plea was "knowing, voluntary, and intelligently made and not the result of force or threats or any promises apart from what is contained in his plea agreement."  (*Id.*)  In addition, the Court found Barbosa-Delgado understood the charges against him, his legal rights, the maximum possible penalty for his offenses and that he was waiving his right to trial and collateral attack.  (*Id.* at 35-36.)

On April 11, 2019, the Court sentenced Barbosa-Delgado and filed the final judgment against him.  (ECF 305, 307.)  He was also required to forfeit the gun and cash recovered during the search of his apartment.  (ECF 306.)  He did not appeal and is now serving the custodial term of his sentence – 60 months imprisonment for the drug-trafficking conspiracy and a consecutive 60 months for the firearms charge – in the Residential Reentry Management Program after serving time at FCI Fort Dix. (Gov't Resp., ECF 404 at 2; Def.'s Mot., ECF 388 at 9.)

Barbosa-Delgado filed his 28 U.S.C. § 2255 motion on May 28, 2021 (ECF 388). In it, he says he met with his attorney and an interpreter around three times before his

guilty plea.  (*Id.* at ECF p. 11.)  He says he told his counsel he "did not agree with the weapons charge" and the gun and money found in his apartment "had nothing to do with the drug conspiracy."  (*Id.*)  Barbosa-Delgado contends he directed his lawyer to challenge the weapons charge and seizure of funds each time they met.  (*Id.* at ECF p. 11-13.)  He asserts no drugs were ever present in or sold from his apartment and he purchased the gun for protection from neighborhood crime.  (*Id.* at ECF p. 11, 13.)  He maintains his attorney did not properly investigate his claims, including by not interviewing his girlfriend.  (*Id.* at ECF p. 10-11, 13.)  Nevertheless, Barbosa-Delgado says he agreed to the Government's plea offer "in late June or early July 2018" because he had "tired of no progress in his case" and his lawyer's "insistence" that the Government had "no better offer" and "the gun charge could not be disputed."  (*Id.* at ECF p. 12.)

## II

28 U.S.C. § 2255(a) allows a prisoner serving a federal sentence to move to "vacate, set aside, or correct the sentence" where: (1) it was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose it; (3) it was in excess of the maximum authorized by law; or (4) it is otherwise subject to collateral attack.  Barbosa-Delgado bears the burden of demonstrating his motion has merit.  *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Further, he "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief.  *See United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).  When considering a Section 2255 motion, a court must "accept the truth of the movant's factual allegations unless they

are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).

A

A Section 2255 motion is subject to a one-year statute of limitations. *See* 28 U.S.C. § 2255(f). The limitations period runs from the latest of four events, including the date on which the judgment becomes final.[3] *Id.* If, like Barbosa-Delgado, a movant does not pursue a direct appeal, the conviction becomes final when the time for filing a direct appeal expires. *See Kapral v. United States,* 166 F.3d 565, 577 (3d Cir. 1999). Here, the time for filing Barbosa-Delgado's Section 2255 petition ran fourteen days from May 11, 2019, the date of the filing of the judgment, i.e., on May 25, 2019. *See* Fed. R. App. P. 4(b)(1)(A); *see also United States v. Porter*, No. 16-36, 2022 WL 742468, at *2 (E.D. Pa. Mar. 11, 2022) ("As Defendant did not file a direct appeal, his judgment became final for § 2255 purposes when his time to appeal expired under the Federal Rules of Appellate Procedure – i.e., 14 days after the entry of judgment in the district court.") (citation and internal quotation omitted). To be timely, Barbosa-Delgado's Section 2255 petition needed to be filed by May 25, 2020. He missed his deadline by over a year when he filed it on May 28, 2021.

---

[3]     The other events triggering Section 2255's statute of limitations are: the date when there is no longer an impediment to a motion created by governmental action in violation of the Constitution or laws of the United States (if the movant could not proceed as a result of such governmental action); the date when the right asserted was initially recognized by the Supreme Court (if that right has been newly recognized by the Supreme Court and made retroactively applicable on collateral review); or the date when the facts supporting the claim or claims presented could have been discovered through the exercise of diligence. 28 U.S.C. § 2255(f). Barbosa-Delgado does not contend the government impeded his filing, his claims involve no newly recognized rights and there is no issue with respect to the discovery of his claims.

B

Even if Barbosa-Delgado's petition were not untimely, it does not provide a basis for relief. "The Sixth Amendment guarantees a defendant the effective assistance of counsel at critical stages of a criminal proceeding, including when he enters a guilty plea." *Lee v. United States*, 137 S. Ct. 1958, 1964, 198 L. Ed. 2d 476 (U.S. 2017) (citations and internal quotation omitted); *see also* U.S. Const. amend. VI. To prove his counsel was constitutionally ineffective, Barbosa-Delgado must show his lawyer's performance "fell below an objective standard of reasonableness" and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011). A court can analyze the performance and prejudice prongs in any order and need not address both if a petitioner makes an insufficient showing on one. *Strickland*, 466 U.S. at 697; *Gaines v. Superintendent Benner Twp. SCI*, 33 F. 4th 705, 712 (3d Cir. 2022). *Strickland's* two-part test is a high bar to surmount. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). There is a "strong presumption" counsel's performance was not deficient and hindsight cannot distort the Court's decision. *Strickland*, 466 U.S. at 689.

Barbosa-Delgado claims his lawyer was ineffective because he did not investigate and pursue exculpatory evidence before advising him to accept the Government's plea offer. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. A failure to investigate "a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation." *United States v. Travillion*, 759 F.3d 281, 293 n.23 (3d Cir. 2014) (internal quotations omitted). To show prejudice

Barbosa-Delgado must demonstrate a "reasonable probability" that, but for his lawyer's failure to investigate or discover potentially exculpatory evidence, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). He must "show a likelihood that some evidence would have been discovered which would have caused his attorney to change his recommendation to enter into a plea agreement." *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997) (citing *Hill* 474 U.S. at 59. Barbosa-Delgado has not shown *Strickland* requires the relief he seeks.

The Court may consider "contemporaneous evidence" from his plea hearing – i.e., the transcript – to ensure hindsight does not distort its review of his claims of ineffectiveness of counsel. *Lee*, 137 S. Ct. at 1967. "Solemn declarations in open court carry a strong presumption of verity," and "representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (internal citations omitted).

Barbosa-Delgado's sworn testimony during his plea colloquy plainly refutes his present conclusory assertions that he told his lawyer: (1) he did not agree with the weapons charge; (2) the seized gun and money had nothing to do with the drug conspiracy; and (3) "his girlfriend would confirm this." (Def.'s Mot., ECF 388 at 11.) During the hearing, Barbosa-Delgado told the Court he was satisfied with his counsel, he had nothing more he needed to discuss with his lawyer and that he understood the

charges against him.  (Gov't Resp., Ex. A., ECF 404-1 at 9-10.)  Relevant to his motion, he agreed that to prove he possessed a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1), the Government would need to prove two things:  (1) that he "committed a drug trafficking crime" for which he could be prosecuted in federal court; and (2) he "possessed a firearm in furtherance of that drug trafficking crime."  (*Id.* at 23-24.)  He confirmed he discussed the charges against him, his plea agreement and acknowledgement of rights form with his lawyer, understood them, had no further questions for counsel and was satisfied with his representation. (*Id.* at 8-9, 14-16, 31.)  At no time did he suggest in any way that he was forced or pressured into pleading guilty, or that anyone, including his lawyer, was making him do so.

Barbosa-Delgado acknowledged that by pleading guilty he was giving up his right to challenge the indictment and that he was waiving his right to proceed to a jury trial where the Government would be obligated to prove his guilt beyond a reasonable doubt and to obtain a unanimous verdict.  (*Id.* at 16-19.)  The Court explained that Barbosa-Delgado was giving up his right to appeal his conviction and limiting his right to appeal his sentence with his guilty plea.  (*Id.* at 20.)  He was reminded that his written guilty plea agreement included an appellate waiver.  (*Id.* at 20-21.)  He did not object.  (*Id.*)

Notably, the Government recited the factual basis for Barbosa-Delgado's plea as including evidence, including several telephone intercepts, showing that he sold drugs as part of his brother Jose Sanchez-Delgado's drug-trafficking business which obtained cocaine from Puerto Rico and elsewhere for resale in Pennsylvania.  (*Id.* at 24-27.)  The

prosecutor described wire interceptions showing Barbosa-Delgado was selling drugs right before law enforcement seized the Smith and Wesson and cash from his apartment.  (*Id.* at 27.)  If he had gone to trial, the Government would have introduced a law enforcement officer's testimony that, based on training and experience, "drug traffickers often keep firearms at their residences in order to protect drug proceeds and/or drugs."  (*Id.*)  Barbosa-Delgado fully admitted to the facts the prosecution presented at the plea hearing.  (*Id.* at 28.)

Barbosa Delgado's motion makes no effort to explain why he did not complain about his counsel's alleged failure to investigate during his guilty plea, at his sentencing or in an appeal.  Nor does it establish any likelihood that further investigation by his lawyer would have uncovered evidence that would have caused him to proceed to trial instead of pleading guilty.  To undermine the veracity of the factual basis for his conviction he offers nothing other than his own conclusory statements, including that "the gun was purchased as protection due to a high crime rate in neighborhood" and "drugs were never present or sold from [his] apartment."  (Def.'s Mot., ECF 388 at 13.)  His "post hoc assertions . . . about how he would have pleaded but for his attorney's deficiencies" are not enough to upset his guilty plea.  *Lee*, 137 S. Ct. at 1967.[4]

---

[4]    To the extent that Barbosa-Delgado contends his lawyer was ineffective because he did not challenge the forfeiture of the gun and the $15,960 seized from his apartment (Def.'s Mot., ECF 388 at ECF p. 5), Section 2255 does not provide a basis for relief.  *See United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015) ("[T]he monetary component of a sentence is not capable of satisfying the 'in custody' requirement of federal habeas statutes."); *United States v. Bansal*, No. 05-193-2, 2015 WL 11017834, at *9 (E.D. Pa. June 22, 2015) ("Challenges to criminal forfeiture . . . are not cognizable under § 2255, even when they are couched as ineffectiveness claims."); *United States v. Golden*, No. 04-4645, 2005 WL 3434004, at *5 (E.D. Pa. Dec. 12, 2005) ("This Court lacks jurisdiction to hear a challenge under § 2255 to the forfeiture order because forfeiture is not a sufficient restraint on liberty to satisfy the 'in custody' requirement for habeas corpus relief.").

III

When a district court denies a Section 2255 motion, a petitioner may only appeal if the district court grants a certificate of appealability.  28 U.S.C. § 2253.  Barbosa-Delgado has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the dispositions of his claims.  As a result, no certificate of appealability shall issue.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

An appropriate Order follows.

BY THE COURT:

**<u>/s/ Gerald J. Pappert</u>**
GERALD J. PAPPERT, J.

---

Even if the Court could hear a challenge to the forfeiture order, it would be without merit. Barbosa-Delgado agreed not to contest forfeiture during his guilty plea colloquy.  (Gov't Resp., Ex. A., ECF 404-1 at 10.)  He also admitted to facts showing the forfeited weapon and cash were used or intended to be used to facilitate drug trafficking.  (*Id.* at 20-21.)